IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| WILLIAM D. HAMPTON, | :: | CIVIL ACTION NO. |
| Inmate # BOP Reg. 26034-044, | :: | 1:07-CV-1765-RWS |
|    Movant, | :: | |
| | :: | |
| v. | :: | |
| | :: | |
| FEDERAL CORRECTIONAL | :: | PRISONER MOTION |
| INSTITUTION, | :: | 28 U.S.C. § 1331 |
| WARDEN ZENK, | :: | |
|    Respondents. | :: | |

**ORDER AND OPINION**

Movant, an inmate at the Federal Correctional Institution in Atlanta, Georgia (FCI Atlanta), has filed a Motion for Immediate Injunction. [Doc. 1.] For the purpose of dismissal only, leave to proceed *in forma pauperis* is hereby **GRANTED**.

**I. Standard for Preliminary Injunction**

"A district court may grant injunctive relief only if the moving party shows that: (1) [he] has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." KH Outdoor, LLC v. Trussville, 458 F.3d 1261, 1268 (11th Cir. 2006). "A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the burden of persuasion as to the four requisites." All Care Nursing

AO 72A
(Rev.8/82)

Serv., Inc. v. Bethesda Mem'l Hosp., Inc., 887 F.2d 1535, 1537 (11th Cir. 1989) (internal quotations omitted). The determination of whether preliminary injunctive relief is warranted is committed to the sound discretion of the district court. See, e.g., Siegel v. LePore, 234 F.3d 1163, 1178 (11th Cir. 2000) (noting that "the grant or denial of a preliminary injunction is almost always based on an abbreviated set of facts, requiring a delicate balancing of the probabilities of ultimate success at final hearing with the consequences of immediate irreparable injury which could possibly flow from the denial of preliminary relief").

## II. Movant's Allegations

Movant seeks relief against possible retaliatory action by FCI Atlanta correctional officers. [Doc. 1 at 1.] Movant states that he has suffered retaliation in the past at other federal prisons and that Atlanta FCI is "known to commit covert and/or overt acts of retaliation against . . . 'problem' inmates. . . . who are only exercising their constitutional and bureau policy right to the administrative remedy process." [Id.] Movant states that he will file a "*Bivens* action suit" regarding the matters addressed in the instant motion once he has exhausted his administrative remedies, but he "is worried about retaliatory action by prison authorities" in the

2

meantime due to FCI Atlanta's "preternatural predisposition for retaliation against any inmate [who] 'rocks the boat.'" [Id. at 1-2, 4.]

Movant presents the following specific allegations. On or about April 12, 2007, he had an introductory meeting with Mr. Stewart, the Unit Manager of "A1," ostensibly the unit where Movant resides at FCI Atlanta; Ms. Rembert, the Unit Case Manager; and Ms. Hawkins, the Unit Counselor. [Id. at 3.] Discussed at that meeting were the nine complaints Movant had delivered to Mr. T. Johnson, Associate Warden at FCI Atlanta, who in turn had given them to Mr. Stewart to resolve. Mr. Stewart "made it crystal clear" that Movant was "not going to tie [his] staff up with complaints," and threatened to put Movant "in the hole" for eighteen months and then ship him out. In hopes of "clean[ing] the slate," as Mr. Stewart put it, Movant agreed not to file the nine complaints. Movant states, however, that the problems at FCI Atlanta are "abundant" and "clearly noticeable," and that adherence to Bureau of Prisons (BOP) policy there is the exception, not the rule. [Id.] After reciting a brief history of his alleged mistreatment at other federal correctional institutions, and his confinement in one Special Housing Unit after another from late November 2005 to March 2007, during which time he was transferred to four different institutions, Movant asks that any further transfer be enjoined. [Id. at 3-4.]

3

AO 72A
(Rev.8/82)

### III. Discussion

As noted above, in order to obtain preliminary injunctive relief, Movant must clearly establish the four prerequisites to such relief. The first prerequisite is a substantial likelihood of success on the merits. Here, Movant claims that he has been threatened with retaliation, i.e., time "in the hole," if he files complaints about the conditions at FCI Atlanta. "To state a retaliation claim, the commonly accepted formulation requires that a plaintiff must establish first, that his speech or act was constitutionally protected; second, that the defendant's retaliatory conduct adversely affected the protected speech; and third, that there is a causal connection between the retaliatory actions and the adverse effect on speech." Bennett v. Hendrix, 423 F.3d 1247, 1250 (11th Cir. 2005), cert. denied, 127 S. Ct. 37 (2006). Movant, however, has no likelihood of success on such a claim until he exhausts his administrative remedies, which he admits he has not done. See Irwin v. Hawk, 40 F.3d 347, 348-49 (11th Cir. 1994) (affirming dismissal of federal prisoner's *Bivens* action for failure to exhaust administrative remedies; noting with approval Eleventh Circuit's prior dismissal, on same basis, of federal prisoner's suit seeking relief, including prospective relief, for allegedly retaliatory placement in administrative detention; and further noting that administrative remedy procedure available to federal prisoner "provides a measure of

4

inherent insulation against potential bias and prejudice arising at the institutional level"). Accordingly, Movant has not demonstrated a substantial likelihood of success on the merits of any retaliation claim that he might file in this Court at this time.

The second prerequisite for preliminary injunctive relief is that, absent such relief, the movant will suffer irreparable injury. Although a movant may meet his burden by showing that "continuing irreparable harm" is threatened, "the asserted irreparable injury must be neither remote nor speculative, but actual and imminent." Siegel, 234 F.3d at 1176-77 (internal quotations omitted). The third prerequisite requires that the threatened injury to the movant, should he not receive injunctive relief, outweigh the potential damage to the respondent if such relief is granted. Because Movant's allegations rely more upon speculation and rumor than actual events at Atlanta FCI, these two prerequisites, taken together, weigh against granting the instant motion.

The "irreparable injury" associated with the alleged threat of retaliation is either that Movant will not file his complaints and will be harmed by prison conditions that his complaints otherwise might help to ameliorate, or that, if does file them, he will be placed "in the hole." However, Movant has barely suggested the nature of his complaints, so that the possibility of "irreparable injury" to Movant if he declines to

5

file them is more speculative than actual. Furthermore, although Movant's allegations suggest that the harm associated with filing his complaints is imminent, the harm is still speculative in that FCI Atlanta officials have taken no retaliatory action against him as yet. Morever, the BOP provides a method for a federal prisoner who fears retaliation at the institutional level to bypass prison authorities and file a complaint or grievance directly with one of the BOP's regional offices. See 28 C.F.R. § 542.14(d)(1) (outlining procedure for grieving "sensitive issues" that might endanger an "inmate's safety or well-being" should his grievance "become known at the institution"). On the opposite side of the scales, it may well be that an order enjoining "retaliation" against Movant at FCI Atlanta will have a detrimental and unwarranted effect on the operations of the prison and on legitimate attempts by prison officials to discipline Movant, and other prisoners, for violations of prison rules.

As the foregoing analysis suggests, a balancing of the potential harm to the parties hardly makes it clear that Movant is more likely to be irreparably harmed from the lack of a preliminary injunction than prison officials are likely to be damaged by the effects of such an injunction. Moreover, Movant has hardly demonstrated that a preliminary injunction impeding the efforts of prison officials to maintain discipline at FCI Atlanta would be in the public interest, so that the fourth prerequisite for

6

preliminary injunctive relief also militates against granting it.  In sum, Movant has not clearly established that he is entitled to the "extraordinary and drastic remedy" of a preliminary injunction, and, therefore, his motion for an immediate injunction must be denied.  See <u>All Care Nursing Serv., Inc.</u>, 887 F.2d at 1537.

### IV.  <u>Conclusion</u>

For the foregoing reasons, Plaintiff's Motion for Immediate Injunction [Doc. 1] is **DENIED**, and this action is hereby **DISMISSED**.

**IT IS SO ORDERED** this   22nd   day of August, 2007.


_____
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE